IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MIKAYLA MARIE LERETTE,

    Plaintiff,

v.

                                          Case No: 25-CV-183

THE CITY OF SUPERIOR, WISCONSIN,
THOMAS CHAMPAIGNE, JOHN KIEL,
JEFFREY HARRIMAN, AND MICHELLE POPE,

    Defendants.

## DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S RESPONSE TO MOTION FOR SANCTIONS

Plaintiff's Response confirms precisely why Rule 11 sanctions are warranted in this case. Rather than confront the clear legal deficiencies identified in Defendants' motion, Plaintiff doubles down on claims that were legally untenable from the outset and factually contradicted by her own discovery responses. The purpose of Rule 11 is to deter exactly this conduct—where counsel, after being put on notice that a claim lacks any basis in law or fact, refuses to withdraw it and instead compels unnecessary litigation. Despite having been provided detailed notice and an opportunity to withdraw under the safe-harbor provisions, Plaintiff persisted in asserting claims that were foreclosed by statute, contradicted by her own admissions, and unsupported by precedent. Plaintiff's attempt to reframe these issues through misplaced references to pleading standards, waiver doctrines, and irrelevant case law only

underscores the absence of a good-faith basis for her filings and validates the necessity of sanctions in this matter.

I.  **A MOTION FOR SANCTIONS IS NOT A MOTION TO DISMISS.**

Defendants did seek dismissal of the claims against them as a sanction under Rule 11 for filing a frivolous lawsuit. (ECF No. 18 at 7); *See Jimenez v. Madison Area Tech. Coll.,* 321 F.3d 652, 657 (7th Cir. 2003) (Dismissal is an allowable sanction under Rule 11). However, Plaintiff's effort to oppose sanctions by invoking waiver or pleading standards is misplaced. A motion for sanctions under Rule 11 is fundamentally distinct from a motion to dismiss under Rule 12. Rule 11 serves to deter the filing of frivolous pleadings and legal contentions that lack evidentiary or legal support. *See Fed. R. Civ. P. 11(b)(2)–(3).* It does not challenge the sufficiency of the pleadings or seek dismissal based on a failure to state a claim. Rather, it addresses the conduct of counsel in signing and maintaining filings that no reasonable attorney could believe are warranted by existing law or by a good-faith argument for its extension.

Accordingly, Plaintiff's reliance on pleading standards under Rule 8 or Rule 12(b)(6), or her assertion that Defendants "waived" arguments by not raising them in an earlier pleading, misunderstands the nature of Rule 11. Sanctions may be sought at any time after the safe-harbor period has expired, so long as the motion concerns conduct occurring in filings submitted to the Court. Rule 11 does not require that a defendant move to dismiss the challenged claim; it requires only that the party first

provide notice and an opportunity to withdraw the offending filing, as Defendants did here.

To illustrate how Plaintiff attempts to evade scrutiny under Rule 11, consider her claim that "the Defendants argue that the First Amended Complaint was sanctionable because it insufficiently alleged that notice of the violation was given to the City." (ECF No. 22 at 8.) That characterization is demonstrably false. Defendants' motion for sanctions (ECF No. 18 at 6) did not challenge the sufficiency of the pleadings or allege that the First Amended Complaint was sanctionable based on its wording. Rather, the notice argument was grounded entirely in Plaintiff's discovery responses, which confirmed the absence of any factual basis for the Lactation claim and demonstrated that Plaintiff continued to advance the claim despite knowing it was unsupported by law. *Id.* Plaintiff's attempt to recast the sanctions motion as a disguised Rule 12 motion is a transparent effort to deflect attention from counsel's own litigation conduct.

Moreover, unlike a Rule 12(b)(6) motion, which assumes the truth of the pleadings and tests only whether they state a claim, a Rule 11 motion examines whether counsel had a factual and legal basis for making those allegations in the first place. *See Brandt v. Schal Assocs., Inc.,* 121 F.R.D. 368, 377 (N.D. Ill. 1988) ("[I]t is of course irrelevant that the SAC survived Schal Defendants' Rule 12(b)(6) motion to dismiss. That tested the legal sufficiency of the pleading, assuming its factual allegations to be true. Schal Defendants are now saying there was no ground for those factual allegations—an altogether different issue.") A complaint that survives a

3

motion to dismiss may still be sanctionable if filed without a reasonable basis in law or fact. *Id.*

Even more troubling is Plaintiff's assertion that the Court must blindly accept as true her boilerplate allegation that "all conditions precedent to this action within the meaning of Rule 9(c) … have been performed or have otherwise occurred." (ECF No. 22 at 7–10.) That argument defies both common sense and the purpose of Rule 11. Plaintiff cannot shield herself from sanctions by pointing to a conclusory pleading allegation that has since been squarely contradicted by her own sworn discovery responses. (ECF No. 19 ¶ 3, Ex. B.)

Once Plaintiff's discovery responses established that the alleged pre-suit notice never occurred, her continued reliance on the contrary representation in the First Amended Complaint was not merely untenable—it was affirmatively misleading. Rule 11 requires attorneys to correct or withdraw pleadings that are revealed through discovery to lack factual support. Persisting in the face of contradictory evidence transforms what might have been an error at filing into sanctionable conduct.

Plaintiff's argument thus exposes a deeper problem: rather than acknowledge that her own discovery responses refute a necessary element of her claim, she insists that the Court must pretend otherwise. Rule 9(c) does not license factual fiction, and Rule 11 does not tolerate it. The duty of candor to the tribunal requires withdrawal of claims once their factual foundation collapses—not doubling down on assertions disproven by the party's own evidence.

4

In short, Plaintiff cannot shield herself from Rule 11 consequences by invoking pleading standards or waiver doctrines that have no bearing on a sanctions inquiry. Defendants do not seek dismissal on a motion to dismiss; they seek accountability for Plaintiff's decision to persist in advancing claims that are facially untenable and contradicted by Plaintiff's own discovery responses. That conduct—rather than the adequacy of her pleading—is precisely what Rule 11 was designed to address.

## II. PLAINTIFF'S EFFORTS TO RECAST HER PLEADING DEFICIENCIES CONFIRM WHY SANCTIONS ARE NECESSARY.

Plaintiff now concedes that the original pleading misapplied the governing Fourth Amendment standard (ECF No. 22 at 3-4), that the factual allegations surrounding the lactation claim were incomplete (*id.* at 7-8), and that the proposed Second Amended Complaint seeks to "finely tune" her theory (*id.* at 4). Those admissions validate Defendants' position that the prior pleadings were not "warranted by existing law."

Rule 11 sanctions are not limited to filings made in bad faith—they apply to objectively unreasonable pleadings. *See N. Ill. Telecom, Inc. v. PNC Bank, N.A.,* 850 F.3d 880, 885 (7th Cir. 2017). As the Seventh Circuit has explained, the Rule "[leaves] no room for an 'empty head, pure heart' defense." *Id.* Plaintiff's amendments to fix basic legal errors underscore why Defendants acted within their rights to invoke Rule 11. Regardless of Plaintiff's concessions, sanctions remain appropriate.

Additionally, in this context, a bad claim spoils the bunch; one cannot avoid sanctions for frivolous claims simply because they were included with one or more non-frivolous claims. *Reed v. Great Lakes Cos., Inc.,* 330 F.3d 931, 936 (7th Cir.

5

2003). Accordingly, the mere existence of an unchallenged Equal Protection claim does not insulate Plaintiff from sanctions. Plaintiff cannot avoid responsibility for asserting a frivolous claim simply because another claim in the same action may be nonfrivolous, as Plaintiff suggests. (See ECF No. 22 at 3).

Moreover, as the Seventh Circuit has explained, a separate "claim" constitutes an independent basis for relief arising from a distinct alleged wrong. *Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 563 (7th Cir. 2007). Plaintiff's Tracker claim plainly fits that definition. It was pleaded as a standalone Fourth Amendment cause of action, seeking additional relief separate and apart from the Equal Protection claim.

Plaintiff's Response muddies the issue by implying that the Tracker allegations are somehow subsumed within her Equal Protection claim. (ECF No. 22 at 3). But that revisionist framing is inconsistent with her own pleadings and the structure of the First and Second Amended Complaint, which both set out the alleged Fourth Amendment "search" as independent violations. Plaintiff cannot now recharacterize her claim to escape the consequences of advancing an untenable constitutional theory.

The critical point is this: if the Tracker claim was not a legally viable Fourth Amendment claim—as Plaintiff's own later arguments effectively suggest—it was counsel's duty under Rule 11 to withdraw or amend it once the deficiency was brought to their attention. Defendants' draft motion for sanctions, served on September 9, 2025, provided precisely that opportunity. Plaintiff's counsel chose not to withdraw the claim and instead persisted in asserting a position that lacked any legal

foundation. That refusal to correct the record after notice is what transforms an objectively unreasonable filing into sanctionable conduct.

### III. PLAINTIFF'S TRACKER CLAIM IS SACTIONABLE.

Plaintiff relies on two cases—*O'Connor v. Ortega*, 480 U.S. 709 (1987), and *City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010)—to suggest that her Tracker claim was not frivolous. Neither case supports Plaintiff's position.

In *O'Connor*, the Supreme Court addressed whether a public employee had a reasonable expectation of privacy in his office, desk, and file cabinets, and the proper Fourth Amendment standard for a search by a public employer in such spaces. *Id.* at 712. The Court recognized that, while some expectation of privacy may exist, that expectation is "reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.* at 717. Thus, *O'Connor* stands for the proposition that a public employee's privacy interest depends on the operational realities of the workplace—not that every workplace search implicates the Fourth Amendment.

*Quon* is equally unavailing. There, the Supreme Court expressly declined to decide whether the plaintiff had a reasonable expectation of privacy in text messages sent from an employer-issued pager and ultimately held that the City's review of those messages was reasonable under the Fourth Amendment. *Id.* at 2627–33. Far from expanding employee privacy rights, *Quon* reaffirmed that reasonableness is assessed in light of the employment context and the employer's operational needs.

Plaintiff's reliance on *O'Connor* and *Quon* misses the threshold issue. Defendants' argument, supported by *Evans v. Amazon.com, Inc.*, 759 F. Supp. 3d 891

7

(E.D. Wis. 2024), is that an employee has <u>no reasonable expectation of privacy</u> in an employer-owned vehicle. (ECF No. 18 at 8.) Without a reasonable expectation of privacy, there is no Fourth Amendment "search" to evaluate for reasonableness in the first place. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Plaintiff's attempt to skip to the "justified at its inception" inquiry presupposes a privacy interest that does not exist here. Moreover, Plaintiff was expressly informed through Superior Police Department Policy 1010.7—that her assigned vehicle was subject to monitoring and search. (ECF No. 18 at 5–6.)

Thus, the Tracker claim was not merely unsupported by existing law; it was foreclosed by it—especially considering qualified immunity. Plaintiff's insistence on advancing the claim despite clear contrary authority underscores why sanctions are warranted.

## IV. PLAINTIFF'S FAILURE TO ADDRESS THE LEGAL UNAVAILABILITY OF EMOTIONAL DISTRESS DAMAGES FOR HER LACTACTION CLAIM CONFIRMS THE FRIVOLOUS NATURE OF THE CLAIM.

Plaintiff's Response entirely sidesteps Defendants' argument that emotional distress damages were not available under the PUMP Act until April 28, 2023, when the enforcement amendments first took effect. (ECF No. 18 at 7.) Plaintiff's claim, however, seeks only emotional distress damages for alleged conduct beginning in November 2022—a period during which such relief was not authorized by law. The absence of any legal basis for the only category of damages sought renders the claim facially defective.

Rather than engage with this dispositive point, Plaintiff argues only that Defendants "have not cited a case where a motion to dismiss was granted because a complaint sought an unavailable form of relief." (ECF No. 22 at 7.) That argument misses the mark entirely. This is not a Rule 12 motion testing the sufficiency of the pleadings—it is a Rule 11 motion challenging Plaintiff's decision to pursue a claim that was legally untenable from its inception. Plaintiff's own framing implicitly concedes the unavailability of emotional distress damages prior to April 28, 2023—the very basis of Defendants' motion for sanctions. *Id.*

Even if the Court were to treat Plaintiff's statement as something less than a concession, her failure to substantively respond constitutes waiver. *See United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008) ("[F]ailure to respond to an argument results in waiver."). By declining to address the core legal defect identified in Defendants' motion, Plaintiff has effectively abandoned any defense of the claim's legal viability.

Under Rule 11, an attorney's signature on a pleading certifies that, after reasonable inquiry, the claims asserted are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Here, Plaintiff's counsel had ample notice—both from the statutory text and from Defendants' draft Rule 11 motion—that the PUMP Act did not permit emotional distress damages prior to April 2023. Counsel nevertheless persisted in asserting that claim and seeking an unavailable form of relief. That is precisely the type of conduct Rule 11 is designed to deter.

9

For that reason alone, the Lactation Claim is sanctionable.

## CONCLUSION

Plaintiff accuses Defendants of filing an "ill-advised" motion that erodes the "collegial culture" of this Court. (ECF No. 22 at 21). To the contrary, Defendants followed the exact procedure required by Rule 11. They provided notice, gave an opportunity to withdraw, and only then sought judicial review. (ECF No. 19 at ¶ 2; Ex. A).

What undermines collegiality is not the lawful use of procedural mechanisms, but the dismissive and personal tone adopted by Plaintiff's counsel advising Defendants what "they should keep in mind" when drafting their final brief. (ECF No. 22 at 20). Rule 11 is designed to prevent precisely what has occurred here. Plaintiff asserted claims that were plainly baseless, was confronted with detailed legal authority explaining why those claims could not stand, yet persisted in advancing them rather than withdrawing or amending as Rule 11 contemplates. This conduct forced Defendants to expend significant time and resources not only briefing and filing a sanctions motion, but also responding to Plaintiff's motion for leave to file a Second Amended Complaint—an effort that compounded rather than corrected the initial violation. To make matters worse, Plaintiff's counsel now attempts to cast himself as the aggrieved party, urging the Court to issue "something beyond a bloodless ruling" against Defendants despite his own failure to comply with the most fundamental obligations of legal diligence.

Rule 11 exists to deter exactly this kind of litigation behavior—where counsel, after being put on notice that a claim is legally indefensible, chooses obstinacy over obligation. The Rule's purpose is not merely to protect defendants from meritless claims, but to preserve the integrity of judicial proceedings from the corrosive effect of advocacy untethered from law or fact.

Defendants respectfully request that the Court recognize that Defendants fully complied with the Rule 11 safe-harbor process before filing and grant Defendants' motion for sanctions as warranted.

Dated this 10th day of November, 2025.

CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants, The City of Superior, Wisconsin, Thomas Champaigne, John Kiel, Jeffrey Harriman, and Michelle Pope

By: */s/ Kiley B. Zellner*
SAMUEL C. HALL, JR.
State Bar No.: 1045476
MAXWELL P. CONGDON
State Bar No.: 1139726
KILEY B. ZELLNER
State Bar No.: 1056806
710 N. Plankinton Ave., Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722
Email: shall@crivellolaw.com
mcongdon@crivellolaw.com
kzellner@crivellolaw.com
