IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MIKAYLA MARIE LERETTE,

Plaintiff,

v.

CITY OF SUPERIOR, THOMAS CHAMPAIGNE,
JOHN KIEL, JEFFREY HARRIMAN, and
MICHELLE POPE,

Defendants.

OPINION and ORDER

25-cv-183-jdp

---

Plaintiff Mikayla LeRette worked as a narcotics investigator for the City of Superior police department. Defendants Thomas Champaign, John Kiel, Jeffrey Harriman, and Michelle Pope were her superiors. LeRette contends that defendants violated her rights in various ways after she became pregnant with her first child in 2022. Specifically, she says that defendants discriminated against her on the basis of pregnancy and maternity status in violation of the Equal Protection Clause of the Fourteenth Amendment, failed to provide her with an appropriate place to pump breast milk in violation of the Fair Labor Standards Act (FLSA), and installed a tracking device on her police vehicle in violation of the Fourth Amendment.

Two interrelated motions are before the court. Defendants move for sanctions under Federal Rule of Civil Procedure 11, contending that LeRette's FLSA and Fourth Amendment claims are frivolous. Dkt. 18. Defendants requested that the court dismiss these claims as a sanction, so the court previously construed the motion as a Rule 12(c) motion for judgment on the pleadings as well. Dkt. 20. LeRette moves for leave to file a second amended complaint, which she says fixes the deficiencies identified in the sanctions motion. Dkt. 17.

The court will deny the motion for sanctions and grant the motion to amend. Defendants have not shown that dismissal of either the Fourth Amendment claim or FLSA claim is warranted at this stage, much less that either of those claims is so baseless as to warrant sanctions. As for the proposed amendment, it changes the previous complaint in only minor ways and defendants have not identified any undue prejudice that they would suffer as a result. This case will proceed to summary judgment on all claims, and the second amended complaint will be the operative pleading.

ALLEGATIONS OF FACT

The court draws the following allegations of fact from LeRette's proposed second amended complaint. Dkt. 17-1. Most of the allegations are the same as the amended complaint, which is the current operative pleading. Dkt. 13. The court will discuss the relevant differences in the analysis.

Plaintiff Mikayla LeRette worked as a narcotics investigator for the City of Superior Police Department. Defendant Michelle Pope was her immediate supervisor; defendant Thomas Champaigne and Jeffrey Harriman were Pope's supervisors; and defendant John Kiel was the assistant chief of police.

In March 2022, LeRette told Pope that she was pregnant. Pope, Champaigne, and Kiel treated LeRette badly during her pregnancy, including by trying to remove her from her narcotics assignment and by telling her that she should wear a "matron skirt" and answer desk calls while pregnant.

LeRette gave birth to her first child in August 2022 and was on maternity leave until November. Before she returned, LeRette told Pope that she would need breaks and a suitable

location to pump breast milk at work. Pope arranged for LeRette to use a shower stall in the women's locker room to pump. LeRette was frequently interrupted while pumping in the shower stall by coworkers and janitorial staff.

LeRette complained to the police chief about the lack of an adequate lactation space. The police chief told LeRette that she could use the public health nurse's office to pump. But the public health nurse's office had a cumbersome reservation process, was not always available when LeRette needed to pump, and was in a different building, which made it difficult for LeRette to time pumping around her work duties. LeRette's husband (who was also a police officer) and LeRette's coworker both told the police chief that the police department needed a lactation room in the same building. But the police department took no further action to provide LeRette with an appropriate location to pump.

Defendants singled LeRette out in a variety of ways after she returned from maternity leave with her first child and particularly after she announced that she was pregnant with her second child in late 2023. They assigned her to disfavored jobs, denied her requests for schedule changes, and made unsubstantiated accusations about the quality of her work and her compliance with police department rules. Many of defendants' accusations were related to LeRette's work schedule, such as whether she had received permission to flex her work hours on certain days or to work overtime. At one point, Champaigne installed an electronic tracking device on LeRette's police vehicle to collect information about when LeRette left for work and returned home. Champaigne did not get LeRette's permission to install the tracking device, which remained on LeRette's vehicle for several weeks.

In May 2024, LeRette went on maternity leave to give birth to her second child. When she returned in September, she was notified that she was being investigated for a variety of

disciplinary violations, including attendance violations, tardiness, insubordination, and misuse of public funds. She was placed on administrative leave and eventually issued a written warning, which remains in her permanent personnel file.

ANALYSIS

LeRette contends that defendants violated her rights under the Equal Protection Clause of Fourteenth Amendment, the Fourth Amendment, and the FLSA by discriminating against her based on pregnancy and maternity status, by placing a tracking device on her police vehicle, and by not providing a suitable private location for her to express breast milk. Defendants move for Rule 11 sanctions against LeRette's counsel, contending that he lacked a legal or factual basis to bring the Fourth Amendment and FLSA claims. Dkt. 18. LeRette moves to amend her complaint. Dkt. 17.

## A. Defendants' motion for sanctions

Federal Rule of Civil Procedure 11 imposes an affirmative duty on attorneys who file documents in court to conduct a reasonable inquiry into the facts and the law before filing and to avoid filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). The court may impose sanctions under Rule 11 if a lawsuit is "not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *CUNA Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963

4

(7th Cir. 1993)). The court considers whether the accused attorney should have known, objectively, that his claims were groundless at the time that they were filed. *Id.*

### 1. Fourth Amendment claim

LeRette's Fourth Amendment claim is based on her allegation that defendants installed a tracking device on her police vehicle to monitor when she came to and from work. Defendants contend that the Fourth Amendment claim is frivolous for two reasons. First, defendants say that under controlling law, employees have no reasonable expectation of privacy in employer-owned vehicles. Second, defendants say that there is no clearly established law on LaRette's side to overcome defendants' qualified immunity defense.

The Fourth Amendment applies to workplace searches of government employees, but it is implicated only if the government's action intrudes upon the employee's reasonable expectation of privacy. *O'Connor v. Ortega*, 480 U.S. 709, 719 (1987) (plurality opinion); *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 757 (2010). In *O'Connor*, the Supreme Court declined to impose a bright-line rule for when an employee has a reasonable expectation of privacy in the workplace, concluding that the issue must be resolved on an individualized basis based on the "operational realities" of the plaintiff's workplace. *See O'Connor*, 480 U.S. at 718–19.[1] This court has observed that the operational realities analysis is a fact-intensive inquiry, making it difficult to resolve at the pleading stage. *See Bowers v. Cnty. of Taylor*, 598 F. Supp. 3d 719, 727–30 (W.D. Wis. 2022).

---

[1] There was no majority opinion in *O'Connor*, but the Court of Appeals for the Seventh Circuit has concluded that the plurality opinion is controlling. *Gustafson v. Adkins*, 803 F.3d 883, 892 (7th Cir. 2015). All citations to *O'Connor* are to the plurality opinion.

Nevertheless, defendants say that there is a bright-line rule in the Seventh Circuit that employees lack a reasonable expectation of privacy in employer-owned vehicles. Defendants rely on *Evans v. Amazon.com, Inc.*, in which a delivery driver brought a state-law invasion of privacy claim against Amazon for covertly filming him inside his delivery van. 759 F. Supp. 3d 891 (E.D. Wis. 2024). The court concluded that Evans lacked a reasonable expectation of privacy inside the delivery van, because the van was his workplace and employees can reasonably expect surveillance by their employers inside the workplace. *Id.* at 899–900.

*Evans* does not support defendants' contention that employees lack a reasonable expectation of privacy in employer-owned vehicles as a general matter. *Evans* is persuasive authority in support of defendants' position, but it's not controlling law. Nor do any of the Supreme Court or Seventh Circuit cases cited in *Evans* establish that employees lack a reasonable expectation of privacy in employer-owned equipment as a general matter. On the contrary, all of those cases emphasize that the reasonable expectation of privacy issue depends on the individual circumstances of the plaintiff's workplace. *O'Connor,* 480 U.S. at 709, 717; *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002); *Narducci v. Moore*, 572 F.3d 313 (7th Cir. 2009).

Defendants point out that Superior police department policy permitted the department to search police vehicles at any time. Dkt. 19-3, § 1010.7. But that doesn't mean that LeRette's Fourth Amendment claim is foreclosed either. The existence of a policy permitting searches is relevant to whether an employee has a reasonable expectation of privacy, but it is not dispositive. *See Quon,* 560 U.S. at 758 (identifying a number of other facts that would have to be considered in addition to the policy permitting searches). And in this case, it's far from obvious whether the policy permitting vehicle searches authorized defendants' alleged conduct,

6

which involved not a search of LeRette's police vehicle while she was at work, but tracking that vehicle while she was off the clock travelling to and from her home.

That leaves defendants' argument that LeRette lacks a viable way to overcome defendants' qualified immunity defense. Generally, a defendant is entitled to qualified immunity unless the plaintiff shows not only that the defendant violated his rights, but also that his rights were clearly established at the relevant time. The plaintiff can meet this burden by pointing to either: (1) a closely analogous, binding case that was decided in her favor; (2) a more general constitutional rule that applies "with obvious clarity" to the defendants' conduct. *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021).

Defendants' arguments for sanctions based on qualified immunity are brief and unpersuasive. Defendants simply rehash their argument that LeRette's claim is foreclosed by *Evans* and assert that the claim is "especially" foreclosed in light of qualified immunity. Dkt. 18, at 6; Dkt. 23, at 8. The court has already determined that *Evans* is not a basis for sanctions. And defendants cite no authority that a Rule 11 motion has ever been granted solely because counsel failed to identify clearly established law in his favor from the outset. The court will deny the motion for sanctions on the Fourth Amendment claim.

Shortly after defendants filed their motion for sanctions, this court issued an order construing it as a Rule 12(c) motion for judgment on the pleadings as well, because a conclusion that the claims were baseless would necessarily mean that they should be dismissed. Dkt 20. But the court has concluded that LeRette's Fourth Amendment claim is not baseless, and defendants made no additional arguments in their briefs that the complaint failed to state a claim for relief. The court will not dismiss the Fourth Amendment claim at this juncture under Rule 12(c).

### 2. FLSA claim

LeRette's FLSA claim is based on defendants' alleged failure to provide her with an appropriate place to pump breast milk during the workday. The FLSA requires employers to provide (1) reasonable break time for an employee to pump breast milk for one year after a child's birth; and (2) "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a). LeRette contends that the city violated the FLSA by offering her a shower stall in the women's locker room, where she was frequently interrupted by coworkers and janitorial staff while pumping breast milk.

Defendants' motion for sanctions is based on a contention that counsel failed to account for two changes in the FLSA's lactation protections that occurred in 2022. The FLSA has required employers to provide reasonable break time and space for lactation since 2010. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 4207 (2010). But in 2022, the statute was modified by the Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP) Act. As relevant here, the PUMP Act:

- added a precondition to suit, which requires employees to notify the employer about the lack of an adequate place to pump and allow ten days to correct the problem, 29 U.S.C. § 218d(g)(1); and
- clarified that employees can seek damages for violations of the lactation rules under 29 U.S.C. § 216(b).

The notice provision went into effect on December 29, 2022, and the damages provision went into effect on April 28, 2023.

Defendants contend that counsel failed to conduct a reasonable investigation into the facts and the law before bringing the FLSA claim, for two reasons. First, defendants say that counsel should have known that LeRette did not satisfy the notice precondition before she

8

sued. Defendants' interrogatory no. 7 asked LeRette to "[e]xplain in detail how you notified your Chief of Police . . . that the space made available to you violated federal law including the date you informed him, the method, and summary of the communication." Dkt. 19-2, at 4. LeRette responded that she met with the police chief on November 16, 2022, to complain about having to use a shower stall to pump. Elsewhere in her interrogatory responses, LeRette said that after the November 16 meeting, the police chief offered LeRette the public health nurse's office as an alternative pumping space, but that LeRette chose not to use that space because it was in a different building and was not always available when she needed it. *Id.* at 5 (response to interrogatory no. 5). But LeRette doesn't say whether she notified anyone that the public health nurse's office wasn't a suitable space for her lactation needs.

Defendants say that LeRette's interrogatory responses firmly establish that she did not satisfy the notice precondition to suit because (1) the November 16, 2022, meeting occurred before the effective date of the PUMP Act, and (2) LeRette never complained about the public health nurse's office as an alternative lactation space. But defendants don't explain why it matters that the November 16 meeting occurred before the effective date of the PUMP Act. Notice wasn't a precondition to suit before the PUMP Act, but nothing in the statute suggests that an employee who had already notified their employer would have had to re-notify after the law went into effect.

As for defendants' argument about the alternative pumping space, LeRette alleges in her proposed second amended complaint that her husband and a coworker informed police department leadership that the alternative space wasn't adequate. Dkt. 17-1, ¶¶ 4028–29. These allegations don't conflict with LeRette's interrogatory responses, because LeRette was asked in the interrogatories only how she notified the police chief that the lactation space was

inadequate, not how others may have notified him. Neither side cites any authority on the issue whether the complaints from LeRette's husband or coworker were sufficient to satisfy the notice requirement, but the court need not resolve that issue to decide the motion for sanctions. Counsel had at least an arguable factual basis to assert that the notice requirement was satisfied, so sanctions are not warranted.

Second, defendants argue that sanctions are warranted because LeRette seeks emotional distress damages for the FLSA claim, which weren't available until the PUMP Act's damages provision went into effect on April 28, 2023. But LeRette was entitled to a lactation space until August 2023, a year after her child's birth. The PUMP Act's effective date at most limits the period during which LeRette was entitled to damages; it doesn't make the FLSA claim frivolous.

In sum, the court sees no reason to award sanctions against LeRette's counsel under Federal Rule of Civil Procedure 11, nor does it see any reason to dismiss those claims at this juncture. Defendants' motion for sanctions will be denied.

## B.  LeRette's motion to amend

After receiving defendants' safe harbor letter containing the draft sanctions motion, LeRette moved for leave to file a second amended complaint. Dkt. 17. The proposed amendment asserts the same claims as the current operative pleading, with the following changes to the factual allegations:

- The proposed amendment alleges that Pope placed a chair in the women's locker room for LeRette to use while pumping. The operative complaint alleges that LeRette put the chair in the women's locker room after her superiors failed to offer any better alternatives.  Dkt. 17-1, ¶¶ 4019–20.

- The proposed amendment adds allegations about the November 16, 2022, meeting in which LeRette notified the police chief about the lack of adequate lactation space. *Id.* ¶¶ 4021–25.

- The proposed amendment adds allegations that LeRette's husband and coworker also notified the police department about the lack of an adequate lactation space. *Id.* ¶¶ 4027–30.

- The proposed amendment alleges that the use of a tracking device on LeRette's vehicle was not necessary to investigate her for suspected employee misconduct. Dkt. 17-1, ¶¶ 4068–71.

- The proposed amendment explains plaintiff's legal theory for her PUMP Act claims in light of the April 28, 2023, effective date of the remedies provision.

Under Federal Rule of Civil Procedure 15(a)(2), the court will freely give leave to amend a pleading when justice so requires. But the court need not allow leave to amend if there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or if the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### 1. Undue delay and prejudice

Defendants say that LeRette has known the facts that she added to her complaint since 2022, so she delayed by not including these facts in her original complaint. LeRette doesn't dispute that she could have included these facts in earlier versions of the complaint, but she argues that "[d]elay on its own is usually not reason enough for a court to deny a motion to amend," and she asserts that defendants have not identified any prejudice they suffered as a result. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).

The court agrees that the proposed amendment will not unduly prejudice the defendants. Defendants assert in conclusory fashion that "[p]ermitting the amendment would necessitate additional discovery and potentially delay the resolution of the case, thereby increasing litigation costs and burdening the Defendants." Dkt. 21, at 3. But defendants don't actually identify any additional discovery they would need, nor does it appear to the court that they would need any more than minimal additional discovery. Much of the proposed amendment is simply a clarification of LeRette's legal theories, which LeRette does not need

11

to plead anyway. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015). There are relatively few new factual allegations, most of which LeRette already disclosed in her responses to defendants' interrogatories in August 2025. *See* Dkt. 19-2.

Defendants' only non-conclusory assertion of prejudice is that LeRette "materially alter[ed] key factual allegations" by saying in the proposed amendment that Pope put a chair in the women's locker room for LeRette to use while pumping. (The previous complaint alleges that LeRette put the chair there herself.) But that is a vanishingly small change to LeRette's factual allegations, which LeRette has attributed to a drafting error in the previous version of the complaint. Defendants provide no explanation why it matters who put the chair in the shower stall, nor why they would not have ample time to investigate the truth of that allegation before summary judgment.

### 2. Futility

Defendants also contend that LeRette's proposed amendment is futile, meaning that it would not withstand a motion to dismiss. *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). Defendants' futility arguments are the same as the arguments they made in support of the motion for sanctions and the court will reject them for the same reason. None of these arguments established that LeRette failed to state a plausible claim for relief under either the Fourth Amendment or the FLSA.

Defendants also argue that the motion to amend is an "improper attempt to circumvent the motion for sanctions." Dkt. 21, at 4 (citing *Hindo v. Univ. of Health Scis.*, 65 F.3d 608, 615 (7th Cir. 1995)). But it is neither unusual nor improper to file an amended complaint after being notified of a pending sanctions motion; in fact, Rule 11 contemplates parties doing exactly that. Fed. R. Civ. P. 11(c)(2) (a party cannot file a sanctions motion "if the challenged

12

paper is . . . appropriately corrected" within 21 days). Nothing in *Hindo* prohibits amendments made in response to a sanctions motion. Rather, the district court in *Hindo* denied leave to amend for the usual reasons: because the amendment was futile, unduly delayed, and would result in prejudice. *See* 65 F.3d at 615. Those reasons aren't present here, so the court will grant the motion for leave to amend. LeRette is directed to file the second amended complaint as a separate docket entry.

ORDER

IT IS ORDERED that:

1. Plaintiff Mikayla LeRette's motion to amend her complaint, Dkt. 17, is GRANTED. Plaintiff is directed to file the second amended complaint as a separate docket entry.

2. Defendants' motion for sanctions, Dkt. 18, is DENIED.

Entered January 29, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge